**Mark AMES**

v.

**DIPIETRO–KAY CORP. and Volvo Penta of America.**

Supreme Judicial Court of Maine.

Argued Nov. 16, 1992.
Decided Dec. 8, 1992.

Justin W. Leary (orally), Robert A. Laskoff, Lewiston, for plaintiff.

Harold J. Friedman (orally), Jennifer S. Begel, Friedman & Babcock, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Dipietro–Kay Corporation ("Dipietro–Kay") and Volvo Penta of America ("Volvo") appeal from a judgment entered in the Superior Court (Knox County, *Kravchuk, J.*) following a jury verdict finding them both liable, under theories of negligence and product liability, for the injuries sustained by Mark Ames ("Ames"). On appeal, Volvo and Dipietro–Kay contend that the Superior Court erred in denying their motions for a new trial and judgment notwithstanding the verdict in that: (1) Ames's own actions constituted a superseding cause of his injuries as a matter of law and (2) the court's instruction to the jury on the emergency doctrine was improper. We affirm the judgment of the Superior Court.

In November of 1986, Ames, a lobsterman from Matinicus, purchased a Volvo engine for his boat from Dipietro–Kay. During the next three or four months, the engine's air filter box twice came apart while Ames was fishing in open waters. Specifically, the clamps securing the air filter box cover, and the cover itself, had fallen off and caused the filter to slip into the box toward the air intake hole of the engine's turbocharger. On both occasions, Ames turned off the engine and reassembled the air filter without any further difficulty. In addition to being informed of Ames's particular problem, testimony presented at trial revealed that Volvo had received other complaints regarding the air filter problem shortly after the engine came on the market in 1986.

On April 17, 1987, Ames was traveling in his boat from Tenants Harbor to Friendship when he noticed that the cover to the box had again come off and that the air filter was lodged in the air intake hole. This time Ames was not traveling in open waters. The boat was approximately 300 feet from the dock and moving at a speed of 12 knots. While the engine was running, Ames reached in with his left hand to grab the filter. Unfortunately, at that moment, the top of his left middle finger was completely severed by the turbo blades located approximately three inches inside the air intake hole.

Ames filed suit against Volvo and Dipietro–Kay and, after a two day trial, the jury returned a verdict in favor of Ames. The jury found both Volvo and Dipietro–Kay guilty of negligence and, furthermore, that Ames's injuries were "proximately caused by an unreasonably dangerous and defective condition in the Volvo engine or air filter box." Although Ames was also

found negligent, his degree of culpability was found to be less than either Volvo or Dipietro–Kay. The Superior Court denied post-trial motions for a new trial and a judgment notwithstanding the verdict and this timely appeal was filed.

## I.

■■■ Volvo and Dipietro–Kay first argue that the evidence presented at trial compels the conclusion that Ames's own actions constituted a superseding cause of his injuries entitling them to a judgment notwithstanding the verdict or, in the alternative, a new trial. When reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, we must determine "whether by any reasonable view of the evidence, including the inferences to be drawn therefrom, taken in the light most favorable to [the non-moving party], the verdict can be sustained. The judgment in favor of [the non-moving party] must stand unless it is clearly erroneous." *C.N. Brown Co. v. Gillen*, 569 A.2d 1206, 1215 (Me.1990) (quoting *Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me.1989)). The trial court's refusal to grant a new trial will not be disturbed unless a clear and manifest abuse of discretion is shown. *Binette v. Deane*, 391 A.2d 811, 813 (Me.1978).

■■■ In order to recover under either a product liability or a negligence theory, it is essential that the plaintiff prove that a product's defective design or the defendant's negligent conduct proximately caused the plaintiff's injuries. *Marois v. Paper Converting Machine Co.*, 539 A.2d 621, 623 (Me.1988); W. Prosser and W. Keeton, *The Law of Torts* § 102, at 710 (5th ed. 1984). We have previously defined proximate cause as "that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the result would not have occurred." *Wing v. Morse*, 300 A.2d 491, 495 (Me.1973) (quoting *Johnson v. Dubois*, 256 A.2d 733, 734 (Me. 1969)). However, the mere occurrence of an intervening cause does not automatically break the chain of causation stemming from the original actor's conduct. In order to break that chain, the intervening cause must also be a superseding cause, that is, neither anticipated nor reasonably foreseeable. *Johnson v. Dubois*, 256 A.2d 733, 735 (Me.1969). Thus, Volvo and Dipietro–Kay should be relieved from liability only if Ames's conduct was not reasonably foreseeable. Volvo and Dipietro–Kay contend that, as a matter of law, Ames's conduct was not a foreseeable consequence of a defective air filter box.

■■■ Issues of foreseeability and proximate causation are generally questions of fact to be resolved by the jury. *Perron v. Peterson*, 593 A.2d 1057, 1058 (Me.1991). Moreover, "[e]ach case must turn on its own facts and the jury as triers of the facts must apply its ordinary human experience to the facts revealed by the evidence." *Jackson v. Frederick's Motor Inn*, 418 A.2d 168, 174 (Me.1980). We conclude that there exists sufficient credible evidence in the record to support the jury's factual determination. Therefore, since the jury's verdict was not clearly erroneous and because the Superior Court did not clearly abuse its discretion in refusing to grant a new trial, the judgment of the trial court is affirmed.

## II.

■■■ Volvo and Dipietro–Kay also argue that the Superior Court erred by instructing the jury on the emergency doctrine. The emergency doctrine recognizes that one "who is confronted with an emergency situation is not to be held to the same standard of conduct normally applied to one who is in no such situation." *See* W. Prosser and W. Keeton, *The Law of Torts*, § 33, at 196 (5th ed. 1984). We have previously described an emergency as "the perplexing contingency or complication of circumstances, in the making or bringing together of which ... no negligence of the [plaintiff] had to do." *Wing v. Morse*, 300 A.2d 491, 497 (Me.1973) (quoting *Coombs v. Mackley*, 127 Me. 335, 338, 143 A. 261, 262 (1928)). However, "[i]f there is sufficient time, even though very brief, in which to take deliberate action after being confront-

ed with a perilous situation, the conduct of an actor is not to be judged under the emergency rule." *Hixon v. Mathieu,* 377 A.2d 112, 115 (Me.1977). The existence of an emergency situation is just another of the circumstances to be considered by the jury during its deliberations.

The court's instruction in the present case constituted a correct statement of the law and the court properly delegated the ultimate decision to the trier of fact. *See id.* at 115.[1] Furthermore, based on the evidence introduced at trial, the jury could rationally have found that an emergency situation existed. In order to dock his ten ton boat, Ames needed sufficient power to put the boat into reverse gear. Volvo and Dipietro–Kay admitted at trial that a dislodged air filter could cause turbo failure which could, in turn, result in an immediate and substantial loss of power. Without sufficient power and because of the proximity of Ames's boat to the dock, there was a possibility that Ames would not be able to remove the air filter from the air intake valve in time to avoid crashing into the pier.

The entry is:

Judgment affirmed.

All concurring.

---

**1.** The Superior Court made it abundantly clear that it was for the jury to decide whether an emergency situation existed in prefacing its instruction with *"If you find an emergency occurred in this case,* then you should recognize that a person confronted by an emergency not *of his own creation is not to be held to the same* degree of care as an ordinary person with time to consider their actions." (emphasis added).