Lauriat, J.
The plaintiff, Nancy J. Campbell (“Nancy Campbell”), as the administratrix of the estate of her husband, John Campbell (“Campbell”), brought this action against the defendants for the alleged wrongful death of Campbell in a snowmobile accident in Kokadjo, Maine on January 17, 1994. Two of the defendants, Robert Gemler (“Gemler”) and Robert Schwartz (“Schwartz”), have moved for summary judgment based on the State of Maine’s Good Samaritan Statute.[2] For the reasons set forth below, the motions are allowed.
BACKGROUND
The following undisputed facts are drawn from the summary judgment record. Where appropriate, the court has drawn inferences from certain facts.
This action arises out of a tragic accident which occurred on January 17, 1994 in Kokadjo, Maine. The decedent, Campbell, was staying at the Kokadjo Trading Post and Sporting Camps (“Kokadjo”), a facility where visitors stay to hunt, fish and snowmobile in the surrounding area. On the evening of January 17, 1994, Campbell went snowmobiling in 20-degree weather with Robert Schwartz (“Schwartz”) and Patrick Haddigan (“Haddigan”). Each man traveled in a separate snowmobile. The three were traveling single-file toward Kokadjo, with Schwartz in the lead, Haddigan second, and Campbell in the rear.
Upon arriving at Kokadjo, Schwartz and Haddigan noticed that Campbell was no longer behind them. They did not consider this unusual, however, since Campbell typically traveled at slower speeds. Concern about Campbell’s absence did not develop until 15-20 minutes after Schwartz and Haddigan returned to the camp. At that point, Schwartz decided to go look for Campbell. Gemler offered to accompany him, and Schwartz accepted even though Gemler had never driven a snowmobile before. Fred Candeloro (“Candeloro’j agreed to let Schwartz use his Polaris snowmobile, a large vehicle that seated two people and was capable of towing a disabled snowmobile. Candeloro made it clear that he did not want Gemler to drive this vehicle. Thus, Schwartz drove Candeloro’s snowmobile, and Gemler used Schwartz’s snowmobile.
When Schwartz and Gemler departed to look for Campbell, no one expressed great alarm about Campbell’s absence. No one alerted any authorities. Fred Candeloro stated the following in deposition testimony:
As far as we knew, John [Campbell] was still traveling toward us. It was just that Bobby [Schwartz] wanted to make sure that he was still traveling towards us. We weren’t going on a rescue mission. We were just going on a cautious mission to make sure that he was moving along.
Deposition of Fred Candeloro, Page 37.
Schwartz and Gemler found Campbell unharmed with his snowmobile, which had broken down. Although Campbell had been drinking heavily, and his blood alcohol level was measured shortly after his death at .34, neither Schwartz or Gemler considered him to be inebriated. After several attempts to start Campbell’s snowmobile failed, it was agreed that Campbell should travel back to Kokadjo with the other two men. Campbell got on the back of Schwartz’s snowmobile. There was no discussion of whether it might be safer for Campbell to ride on Gemler’s snowmobile, which had room for two people. For reasons which are not apparent from the record, Schwartz now drove his own vehicle, and Gemler drove Candeloro’s, despite Candeloro’s earlier statements that Gemler should not be allowed to use his snowmobile.
The three men began to proceed toward the Kokadjo. Since Schwartz’s snowmobile was designed for just one person, Campbell stayed aboard by holding onto Schwartz’s midsection. At some point during the trip, Campbell fell from Schwartz’s snowmobile. Gemler, who did not see Campbell, then struck him with his snowmobile. Schwartz stopped his snowmobile and informed Gemler that Campbell had fallen off. Gemler stated that he had hit what he had thought to be “a bump” and was now worried it might have been Campbell. The two men found Campbell unconscious but unbloodied on the side of the trail. Gemler attempted to perform CPR and mouth-to-mouth assistance, but Campbell did not regain consciousness. Gemler continued these efforts as Schwartz returned to the camp to seek emergency assistance. An ambulance eventually arrived at the scene of the accident.
DISCUSSION
Summary judgment must be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Daws, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving *33 party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp. 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. Applicability of Maine “Good Samaritan” Statute
The threshold question raised by the two motions for summary judgment is whether Maine Title 14 §, 164, a so-called “Good Samaritan” statute, applies to this case.[3] That statute provides that:
any person who voluntarily, without the expectation of monetary or other compensation from the person aided or treated, renders first aid, emergency treatment or rescue assistance, shall not be liable for damages for injuries alleged to have been sustained by such person nor for damages for the death of such person alleged to have occurred by reason of an act or omission in the rendering of such first aid, emergency treatment or rescue assistance, unless it is established that such injuries or such death were caused willfully, wantonly or recklessly or by gross negligence.
It is undisputed that Gemler and Schwartz were not engaged in “first aid” or “emergency treatment” when they went to look for Campbell. Thus, the inquiry devolves to whether or not Gemler and Schwartz were engaged in “rescue assistance.” If so, the statute applies and liability is possible only for wilful, wanton or reckless conduct. If not, ordinary negligence rules apply.
An interesting preliminary question for the court is whether the applicability of this statute is a question of fact or of law. This inquiry is not aided by the fact that there are no published decisions construing Title 14 §, 164. Nancy Campbell, in support of her contention that whether “rescue assistance” took place is a question for the jury, points to Ames v. DePietro-Kay Corporation, 617 A.2d 559-61 (Me. 1992). In Ames, the court found application of the “emergency doctrine” to be an issue of fact for the jury. However, the “emergency doctrine,” which applies a lower standard of care for persons confronted with an emergency, is not synonymous with the Good Samaritan statute, Maine Title 14 §, 164. Further, even assuming arguendo that the rules created by the emergency doctrine and the Good Samaritan statute are rough analogs, Ames did not hold that the emergency doctrine is invariably a factual matter. Rather, the court simply treated it as a factual question in the circumstances of that case.
Cases from other jurisdictions indicate that the applicability of Good Samaritan statutes may be either a question of fact or of law depending on the circumstances. See, e.g., Buck by Buck v. Greyhound Lines, Inc., 783 P.2d 437, 441 (Nev. 1989) (statute not applicable since, as a matter of law, no emergency existed); compare Nelson v. Powers, 402 So.2d 129, 136-37 (La. App. 1981), cert. denied, 409 So.2d 616 (whether an emergency existed was question for jury). In sum, there appears to be no support for Nancy Campbell’s contention that the application of a Good Samaritan statute is invariably a question of fact.
In the present case the court treats the application of the statute as a question of law given the substantial evidence, discussed in more detail below, that Gemler and Schwartz were engaged in rescue assistance within the meaning of Maine Title 14, §164.
“Good Samaritan statutes typically extend limited immunity from civil liability to all persons who render assistance at the scene of an emergency.” Flynn v. U.S., 681 F.Supp. 1500, 1507 (D. Utah 1988), modified on other grounds, 902 F.2d 1524 (10th Cir. 1990). Typically, such statutes apply only in the context of an “emergency.” See, e.g, Utah Code Ann. §78-11-22 (emergency care); RCW 4.24.300 (emergency care); N.Y. Pub. Health Law §3000-a (first aid or emergency care at the scene of an accident). Such statutes appear to be limited to situations where harm is imminent. See, e.g., Jobst v. Butler Well Servicing, Inc., 372 P.2d 55, 59 (1962) (Good Samaritan doctrine applies in situations of “imminent and serious peril”).
The facts of this case do not appear to meet the imminent harm standard employed by most Good Samaritan statutes. The circumstances of this case suggested that Campbell might be in some danger, given the late hour and low temperature and the fact that his whereabouts where unknown, but it was not apparent he was in imminent, serious peril. In fact, when Gemler and Schwartz found Campbell, he was unharmed and engaged in an attempt to start his snowmobile. As discussed above, Candeloro himself termed the search for Campbell “a cautious mission.” Additionally, no authorities were contacted.
However, the Maine statute does not adopt the imminent harm standard, and instead employs the broader term “rescue assistance.”[4] This language suggests applications in situations other than an outright “emergency." The court concludes, as a matter of law, that Schwartz and Gemler were engaged in rescue assistance when they went looking for Campbell. When someone disappears, at night, in 20-degree- *34 below-zero temperatures, in a rural area, a mission to determine his whereabouts is properly termed a rescue. Candeloro’s determination, after the fact, that Schwartz and Gemler were not engaged in a rescue mission should be accorded minimal weight. Thus, the court concludes that Title 14, §164 applies to this action.
II. Willful, Wanton or Reckless Conduct
Title 14, §164 states that those within its ambit shall not be held liable unless they caused injury or death “willfully, wantonly or recklessly or by gross negligence.” Thus, it appears that Gemler and Schwartz must, at a minimum, have been grossly negligent in order for liability to be possible.
As was asserted at oral argument, a comparison of Maine and Massachusetts law suggests subtle differences in the way the courts of the two states have historically analyzed the terms “wanton” and “grossly negligent.” In Maine, gross negligence “is the equivalent of wanton or reckless misconduct.” Blanchard v. Bass, 153 Me. 354, 361 (1958) (noting difference between Maine and Massachusetts standards). Time may have eroded such distinctions, however. The Supreme Judicial Court recently noted that:
Wanton conduct may suggest arrogance, insolence, or heartlessness that reckless conduct lacks [citation omitted], but the difference is likely not to be significant in most cases. Our recent practice has been simply to refer to reckless conduct as constituting the conduct that produces liability for what the court has traditionally called willful, wanton or reckless conduct.
Sandler v. Commonwealth, 419 Mass. 334, 335 (1995). Since Sandler indicates that Massachusetts, like Maine, views reckless and wanton conduct as essentially equivalent, that case serves as a sensible touchstone forjudging the facts of this case.
“Reckless failure to act involves an intentional or unreasonable disregard of a risk that presents a high degree of probability that substantial harm will result to another.” Sandler v. Commonwealth, 419 Mass. 334, 336 (1995) (governmental unit not reckless even though it persistently failed to-remedy defects on a traveled bikeway). See also Blanchard, 357 Me. at 154 (discussing wantonness as involving a high degree of probability that substantial harm will result).
Gemler’s actions do not present a close question when measured by this standard. There is no evidence in the record upon which to conclude that Gemler’s actions were more than negligent. He was not aware that Campbell had fallen off the snowmobile. His striking of Campbell appears to have been purely accidental. Gemler’s decision to accompany Schwartz on the rescue mission even though he had never driven a snowmobile, while questionable in retrospect, does not create a factual question on the issue of recklessness. This decision certainly did not create a high probability that harm would result to Campbell.
Schwartz’s actions present a somewhat closer question, since it appears to have been his decision to place Campbell with him on the one-person snowmobile. However, the record does not suggest that this decision (in which Campbell himself participated) created by itself a high risk of serious harm to Campbell. Nor did Schwartz do anything to cause Campbell’s fall from the snowmobile.
Certainly, the attempt to rescue Campbell was not handled perfectly or even artfully. Although the court does not so hold, it is possible that Schwartz and/or Gemler was negligent. However, there is no evidence in the record that either acted willfully, wantonly, or with gross negligence. Their motions for summary judgment must therefore be allowed.
ORDER
For the foregoing reasons, Defendant, Robert Gemler [sic] Motion for Summary Judgment and Cross Motions [sic] of Defendant Robert Schwartz to Robert Gemler’s Motion for Summary Judgment are ALLOWED.[5]

 On April 4, 1997, this court (Lauriat, J.) allowed the motion of defendants Fred Candeloro and Marie Candeloro, dba Kokadjo Camps, to dismiss for lack of personal jurisdiction. They are no longer parties to this action.

 Nancy J. Campbell has conceded that Maine substantive law, in general, should apply to this action. The court also makes the determination that Maine substantive law applies.

 Rescue is defined as “to free from confinement, danger or evil.” Webster’s New Collegiate Dictionary (1979 Ed.)

 Schwartz has also moved for a determination of whether the Maine Wrongful Death Statute would apply to damages in this action. Since the court has granted summary judgment on Nancy Campbell’s claim against Schwartz, the court does not reach this issue.

 Counsel for Robert Schwartz at stated during oral argument that this motion is in fact a motion for summary judgment directed at Campbell. The court treats it as such.